# EXHIBIT 1

EXHIBIT 1



# Standard Terms & Conditions of Sale

February 1st, 2024

**LIST OF OFFICES**

**A/S Dan-Bunkering Ltd.** · Middelfart, Denmark · Hellerup, Denmark

**Dan-Bunkering (Monaco) S.A.M.** · Monaco

**Dan-Bunkering (Middle East) DMCC** · Dubai, UAE

**Dan-Bunkering (America) Inc.** · Houston, USA · Stamford, USA

**Dan-Bunkering (Singapore) Pte. Ltd.** · Singapore · Shanghai, China · Beijing, China

**Dan-Bunkering (Australia) Pty Ltd.** · Sydney, Australia

**Dan-Bunkering (South Africa) Pty Ltd.** · Cape Town, South Africa

**Dan-Bunkering (Africa) Ltd.** · Road Town, BVI

**Dan-Bunkering (Angola) Limitada** · Luanda, Angola

EXHIBIT 1

dan-bunkering.com

These Standard Terms & Conditions of Sale ("STCS") shall apply to all Contracts for the sale of Products and services by A/S Dan-Bunkering Ltd. and its subsidiaries and/or affiliates "the Dan- Bunkering Group" with effect from February 1st, 2024 ("the Effective Date") until further notice.

## 1. DEFINITIONS AND TERMS:

**1.1** In these Terms and Conditions the words in bold shall have the following meanings:

| | |
|---|---|
| **'Affiliate'** | a company, partnership, or other legal entity which controls, is controlled by, or is under the indirect ownership of fifty per cent (50%) or more of the issued share capital or any kind of voting rights in a company, partnership, or legal entity, and "controls", "controlled" and "under common control" shall be construed accordingly. |
| **'Agent'** | any party acting on behalf of the Buyer and/or the Vessel. |
| **'Arrival Notice'** | the notice sent from the Buyer to the Seller containing not less than the following information together with any other information advised to the Buyer to be required: 1) Call sign, 2) Vessel's Name, 3) Owners, 4) Flag, 5) Agents, 6) Length Overall, 7) Gross tonnage, 8) Net Tonnage, 9) Deadweight, 10) Ex-Names, 11) Expected time of arrival, 12) IMO Number. |
| **'Bunker Delivery Note'** | a document issued at the point of delivery by the Seller or the physical supplier recording the specification and quantities of Products delivered to a Vessel. |
| **'Buyer'** | all parties, jointly and severally, named on the Order Confirmation who have contracted with the Seller to buy Products, including their assignees or successors. |
| **'Contract'** | shall have the meaning set out in Clause 1.2. |
| **'Seller's Bank Account'** | the bank account stipulated on the Seller's invoice for payment in respect of the Contract. |
| **'Independent Surveyor'** | an independent survey Company or a surveyor appointed either by the Seller in its sole discretion or jointly appointed by the Seller and the Buyer. |
| **'Order Confirmation'** | a written confirmation issued by the Seller setting out the details of the supply of Products including 1) Identity of the Buyer; 2) Grade and volume of products; 3) Supply date; 4) Place of supply; 5) The agreed price. |
| **'Place of Supply'** | the location where the Products are to be supplied. |
| **'Price'** | the price stated in the Order Confirmation; and whether or not identified in the Order Confirmation (i) any applicable Taxes or other duties; and (ii) any delivery costs as set out in Clause 4. |
| **'Products'** | oil products supplied for use by the Vessel's engines and machinery and/or any other products and/or services that the Seller delivers or contracts to deliver. |
| **'Sanctions Laws'** | the various export controls and economic sanctions regulations, including but not limited to, any economic or financial sanctions or trade embargoes administered or enforced by various European Governments and the EU, Switzerland, the US Government as enforced by the US Office of Foreign Assets Control, the US Department of State, and the US Department of Commerce, and various UN sanctions as implemented into local laws, or any other relevant Sanctions authority. |
| **'Seller'** | the party that issues the Order Confirmation or stated in the Order Confirmation as Seller. |
| **'Spill'** | escape, spillage or discharge of Products. |
| **'Supply Equipment'** | the Seller's or the physical supplier's barges, tankers, trucks, pipes and pumps used to supply Products to the Vessel. |
| **'Vessel'** | the vessel, rig, platform or other installation to which the Products are being delivered or in respect of which the Buyer has contracted to buy the Products. |

**1.2**  These STCS together with the Order Confirmation shall constitute the full and final agreement between the Buyer and the Seller (the Contract), and shall supersede and replace any other agreements made between the Parties prior to the Contract and any other terms that the Buyer may seek to impose. No variation shall be binding unless agreed in writing by the Seller.

**1.3**  In the event of a conflict between the STCS and the Order Confirmation the Order Confirmation shall prevail but only to the extent of the conflict and in all other respects the STCS shall apply.

**1.4**  The Buyer buys and the Seller sells Products in accordance with the Contract and these STCS shall be incorporated into all Order Confirmations and Contracts or any other sales of Products entered into between the Seller and the Buyer whether or not express reference to the STCS is made therein.

## 2. ORDER CONFIRMATION

**2.1**  A binding Contract comes into existence when the Seller sends the Order Confirmation to the Buyer. If the Seller for whatever reason fails to issue or send an Order Confirmation to the Buyer these STCS shall govern the sale nonetheless and a contract pursuant to these STCS shall be deemed to have come into existence.

**2.2**  Where a Contract is entered into by an Agent, whether disclosed or undisclosed, then such Agent with notice of the STCS shall (i) be jointly and severally liable with the Buyer for the proper performance of all the obligations of the Buyer under this Contract as if acting as a principal; and/or (ii) guarantee the Buyer's obligations under the Contract.

**2.3**  All orders of Products are considered to be emanating from the Master of the Vessel, even if relayed by the Buyer to the Seller and even if no written request from the Master of the Vessel exists. The Buyer's obligations under a Contract shall be treated as a primary lien on the Vessel.

## 3. ARRIVAL NOTICE

**3.1**  Within 24 hours of a Contract being formed the Buyer shall send to the Seller a compliant Arrival Notice confirming arrival in accordance with the delivery period stated in the Order Confirmation. Further Arrival Notices shall be sent 72, 48 and 24 hours before the Vessel's arrival at the Place of Supply. If the Contract is entered into less than 72 hours from delivery, Arrival Notices shall be provided daily from the date of the Contract.

**3.2**  The Buyer or its appointed agent at the Place of Supply shall ensure compliance with all requests from the Seller or its sub-contractors concerning the Vessel's arrival.

**3.3**  The Seller shall at any time be entitled to cancel the Contract for the account and risk of the Buyer if the Buyer fails to provide Arrival Notices as aforesaid within the agreed delivery period.

**3.4**  The Seller may at its discretion revise the Price and date of supply or shall have the right to cancel the Contract if the Vessel is not available to receive Products within the agreed delivery period or within 2 hours of the arrival time as stated in the last Arrival Notice, and the Buyer shall be liable for any cost and losses incurred by the Seller as a result of the delay or cancellation in accordance with Clause 12.7 of these STCS.

## 4. PRICE

**4.1**  The Seller shall issue its invoice for the Price promptly upon delivery, and Buyer shall pay the Price in accordance with the terms of the Contract.

**4.2**  Buyer shall be responsible for and pay and/or indemnify the Seller for any additional expenses or costs such as barging, demurrage, wharfage, port dues, fees and any other delivery costs, including, without limitation, those imposed by governmental authorities or charges for delivery outside normal working hours at the Place of Supply or for rescheduled delivery. Seller reserves the right, upon notification to Buyer, to adjust the Price after the date of the Order Confirmation to reflect any increase in costs to Seller not included in the Order Confirmation if necessary by raising an additional or revised invoice.

**4.3**  The Buyer shall be responsible for and shall pay and/or indemnify the Seller and is sub-contractors for any and all federal, state and local taxes, duties, fees, , including but no limited to any  VAT, sales taxes, GST, energy tax, motor fuel tax, withholding tax, import/export duties, and any other taxes, duties, fees levies or penalties (excluding corporate income tax)(hereinafter "Taxes") paid or incurred directly or indirectly in connection with the performance of the Contract. Seller reserves the right, upon notification to Buyer, to adjust the Price after the date

of the Order Confirmation to reflect any liability related to Taxes not included in the Order Confirmation if necessary by raising an additional or revised invoice.

4.4   Buyer shall provide to Seller any documentation, including, but not limited to, registrations, exemptions, certifications, claims, refunds, declarations or otherwise, in a form and format, and on or before whatever due date which Seller shall require in dealing with authorities in connection with any Taxes. Further, Buyer shall indemnify and hold Seller harmless for any damages, claims, liability or expense Seller may incur due to Buyer's failure to comply with this requirement. Claims related to Taxes shall not be time barred or fall under any notice requirement until 6 months following the claim being time barred under any applicable law.

4.5   The Seller shall have a lien on the Vessel for all sums payable in respect of Products delivered to the Vessel.

## 5. PAYMENT

5.1   Payment shall be made in United States Dollars (or any equivalent currency as the Seller may require) by bank transfer to the Seller's Bank Account, net of all banking charges. Payment shall be deemed to have been made on the date the payment is credited to the Seller's Bank Account. Payment to any other bank account shall not release the Buyer from its payment obligations.

5.2   Payment must be made in full without any discount or deduction, and there shall be no withholding either in part or in full by reason of any set-off, counter-claim or for any other reason, whether relating to the Contract or past agreements or Contracts.

5.3   If any sum due pursuant to any Contract is not paid within the agreed time or if contrary to the provisions herein payment is withheld or set-off for any reason the Buyer shall pay compensation to the Seller of 20% (twenty per cent) of the outstanding amount. Such compensation is a reasonable pre-estimate of the Seller's loss, considering the additional management time incurred in dealing with late payment, the loss of opportunity to reinvest the missing funds and currency exchange fluctuations. This late payment compensation is payable in addition to the Price and accrued interest.

5.4   Subject to clause 5.5 payment of the Price shall be due immediately upon delivery of the Products or in all other cases immediately upon an invoice being issued.

5.5   The Seller may grant credit deferring payment beyond the period stated in clause 5.4, in which case the credit period shall be stated on the Order Confirmation. The granting of credit is in the Seller's discretion and the Seller may withdraw credit at any time and demand immediate payment if the Seller has reason to alter its assessment of the credit risk. Withdrawal of credit shall be by written notice, and Seller need not provide reasons. Where the Seller withdraws credit before delivery of Products then the Seller may withhold delivery until payment of the Price or alternatively the Seller may cancel the order or terminate the Contract, without recourse by the Buyer.

5.6   The Buyer shall not be entitled to insist upon provision of a Bunker Delivery Note before making payment, but the Seller shall nevertheless use reasonable endeavours to provide a Bunker Delivery Note with its invoice.

5.7   Without prejudice to any other rights or remedies available to the Seller the Buyer shall pay interest to the Seller on all balances that remain unpaid from the date that they were due or, upon the withdrawal of credit, became due for payment. The rate of interest shall be) two percent (2%) per month and the interest shall be compounded monthly for each month, or part thereof. The Seller may issue interest notes which shall be binding as to the amount of interest due. The Buyer's obligation to pay interest is not conditional upon interest notes being issued.

5.8   If the Seller incurs any costs in relation to attempts to collect any overdue sums the Buyer shall indemnify the Seller for those costs and shall pay the same upon first demand. Such costs include but not limited to attestation and translation costs, fees of third party debt collection agencies, lawyer's fees and communication/postal costs.

5.9   Seller may from time to time without need for prior consent of Buyer, assign any of its rights under the Contract to any third party and the assignee shall enjoy and be entitled to exercise against Buyer any and all rights herein conferred upon Seller.

5.10   If at any time an amount is payable by Buyer to Seller, such amount may at the sole discretion of Seller be fully or partially paid by set-off against any amounts payable to Buyer by Seller and any Affiliate of Seller.

5.11   The Seller has unlimited authority and discretion as to the allocation of payments made by the Buyer and is not bound by any allocation advised by the Buyer. Without prejudice to the generality of the foregoing the Seller is entitled to (i) settle invoices for Products as it sees fit and irrespective of their date; (ii) extinguish claims for compensation, interest, legal fees or any other sums due from the Buyer in priority to invoices for Products.

**5.12** The Seller shall have the option to terminate the Contract without liability to the Buyer and shall be entitled to claim immediate payment of all outstanding amounts and damages for any costs or losses arising from the termination, in the event of: (i) bankruptcy, liquidation, suspension of payment, or comparable situation of the Buyer; or (ii) any other situation, which in the reasonable discretion of the Seller is deemed to affect adversely the financial position of the Buyer.

**5.13** The Buyer shall provide the Seller with no less than seven (7) days' prior notice in writing before making payment from an account belonging to a party that is not the Buyer. Under such circumstances, for verification purposes the Seller shall require the Buyer to provide details and relevant supporting documentation on the payor's full name, country of incorporation, registered address, line of business, relationship with the Buyer, and the reason why payment is being made on behalf of the Buyer. In the event that the Seller is unable to verify the payment and/or payor to its satisfaction, the Seller shall be entitled in its discretion to reject such payment and require the Buyer to make another payment from another duly verified account and/or payor.

## 6. DELIVERY

**6.1** The Buyer is responsible to obtain all necessary permits and shall comply with all regulations applicable to the receipt, handling and use of the Products to be supplied at the Place of Supply. The Buyer shall comply with all requests for information from the Seller, the Seller's agents or sub-contractors, and the physical supplier.

**6.2** The Seller shall use reasonable endeavours to commence delivery within the delivery period agreed in the Order Confirmation however no guarantee of the time or rate of delivery is given and the Seller shall not be liable for any losses or damages including demurrage, howsoever caused, suffered by the Buyer due to any delay in delivery. The Seller will not be liable for any loss incurred by the Buyer due to any failure or delay in supply due to (a) congestion affecting the physical supplier of Products at the delivery facilities, (b) prior commitments of available barges, (c) local customs, pilots, port or other authorities or (d) shortage of Products of the required specification or (e) failure or under-performance of the Supply Equipment, or (f) the authorities withdrawing licenses for barge suppliers or otherwise in any manner interfering with the supply of Products, or (g) any circumstances out of the direct control of the Seller. .

**6.3** Responsibility for connections and disconnections of the delivery hose is the Buyer's and the Buyer will render all necessary assistance and equipment to take delivery. The Vessel will provide a free, safe and always accessible side for the delivery. The Master of the supply barge shall determine whether mooring alongside the Vessel is safe and if it is not the Seller may delay or cancel delivery and all costs incurred will be for the Buyer's account.

**6.4** Lightering/barging charges and related mooring, unmooring and port dues shall be for the account of the Buyer, who will be liable for all demurrage or additional expenses incurred if the Buyer causes delay in the supply of Products.

**6.5** The Buyer is committed to take the full quantities of Products specified in the Order Confirmation and the Buyer shall be responsible for any loss, damages and/or costs resulting from the Buyer's failure to take complete delivery, including but not limited to any loss of profit and any loss on the resale of the Products, and under such circumstances the Buyer shall bear the risk of the return transport, barge or trucks demurrage and the costs of storing or selling of the Products.

**6.6** In order that Products supplied by the Seller but not yet paid for can be identified at all times the Buyer is obliged to keep (i) all Products in such manner that they can be identified to the Contract; and (ii) to keep the Products supplied pursuant to a single Contract segregated from other Products delivered to the Vessel.

**6.7** Where it is necessary according to the regulations or practice of the Place of Supply that a port agent be appointed for the delivery of bunkers, the Seller or the Seller's sub-contracted supplier may appoint a port agent on the Buyer and Vessel's behalf. The Buyer and the Vessel shall be jointly and severally liable for any fees, expenses, charges, taxes, duties or fines incurred on behalf of the Vessel or Buyer.

## 7. PROPERTY AND RISK

**7.1** Title to the Products shall pass only when the Buyer has paid for the Products and paid all other sums due to the Seller under the relevant Contract or other Contracts.

**7.2** The Buyer shall become liable for the Products immediately upon the Products passing the Vessel's rail, Supply Equipment's manifold or delivery to the designated place, and risk of the Products shall pass to the Buyer at that time.

## 8. QUALITY

**8.1** The Buyer shall have the sole responsibility of the nomination of the grade of Products requested for the Vessel. The Seller excludes any express or implied warranties as to the fitness for any purpose, stability or compatibility of the Products.

**8.2** Where the Buyer nominates Products above the sulphur limits set out in MARPOL Annex VI, the Buyer shall be fully responsible for, and on the Seller's request provide confirmation in writing, that the Vessel has working Abatement Technology (as defined in MARPOL Annex VI) installed in compliance with MARPOL Annex VI or must include a copy of a valid Fuel Oil Non-Availability Report (FONAR) and the relevant authorisation granted to the Vessel for that specific delivery of Products. The Buyer shall indemnify the Seller of all cost or losses incurred as a result of Seller's breach of this Clause 8.2.

## 9. QUANTITY

**9.1** The quantity of Products delivered by the Seller to the Buyer shall be established according to soundings or other measurements taken by the Seller from the Supply Equipment or shore tanks which shall be conclusive evidence of the quantities delivered and shall be recorded in the Bunker Delivery Note which the representative of the Buyer shall be invited to sign. The Bunker Delivery Note shall be binding evidence of the quantity delivered, regardless of the Buyer's failure to sign the same. Measurements by any other means shall not be binding on the Seller, save for a measurement according to clause 9.2.

**9.2** The Buyer may request that an Independent Surveyor measure the quantity of Products delivered by measuring the Supply Equipment or shore tanks and shall issue his survey report. The Buyer shall pay the Independent Surveyor's costs and expenses in relation to the measurements of the quantity of Products delivered. The measurement carried out by the Independent Surveyor shall then be conclusive evidence of the quantities delivered. Both the Seller and Buyer shall have the right to witness the measurement operations. The quantity of Products delivered shall be the quantity specified in the Order Confirmation with a tolerance at Seller's option of +/- 5 % of the quantity specified.

## 10. SAMPLING

**10.1** The Seller shall arrange for samples to be taken during delivery of the Products. Unless otherwise agreed in writing the samples shall be taken in accordance with the sampling procedures customary at the Place of Supply.

**10.2** Sampling shall be performed in the presence of the Buyer and Seller, or their representatives, but the failure of the Buyer to attend the sampling process shall not prejudice the validity of the samples.

**10.3** All samples shall be sealed, labelled and signed by both the Buyer and Seller and their numbers stated on the Bunker Delivery Note, or their representatives and two samples shall be retained by the Buyer one being the MARPOL compliant sample. The remaining samples shall be retained by the Seller or its representatives.

**10.4** Where there is a complaint concerning the quality of the Products, one of the aforesaid samples retained by the Seller shall be tested by an independent laboratory mutually appointed by the Buyer and Seller. Testing shall be limited to analysis of the disputed properties and the results shall be conclusive and binding evidence of the quality of the Products supplied to the Vessel. The conformity of the Product shall be determined in accordance with ISO 4259 and to the extent that the components detected are within the allowed tolerances in respect of reproducibility or repeatability as set out in ISO 4259 the Product shall be deemed to be compliant according to ISO 8217.

**10.5** If the Buyer's complaint concerning the quality of the Product is based on the presence of substances which are not part of the quality specifications set out in Table 1 or Table 2 of ISO 8217, the Buyer shall show that the substances in question without a reasonable doubt jeopardize the safety of the Vessel or adversely affect the performance of the machinery.

**10.6** The Seller and the Buyer shall seek to agree on an independent laboratory to perform analysis, but if the Buyer fails to reply to the Seller's request to agree an appointment within 7 days from receipt of such notice or if the parties cannot agree then the Seller shall select the laboratory and such selection shall be final and binding for all parties involved.

## 11. CLAIM

**11.1** Any claim related to the delivered quantity of the Products must be advised by the Buyer or the Master by telephone and in writing immediately that the grounds for the claim are known failing which any claim shall be deemed to be waived and barred. Comments inserted in the Bunker Delivery Note or in a separate protest handed to the physical supplier shall not qualify as notice.

**11.2** Any claim related to the quality of the Products delivered shall be made in writing to the Seller immediately that the Buyer is aware of the grounds for the claim and in no circumstances later than 15 days from the date of delivery to the Vessel. Failure to make timely notification as stipulated in this clause shall result in the claim being deemed waived and barred.

**11.3** A written claim for the purposes of clauses 11.1 and 11.2 must provide a complete and comprehensive explanation of the circumstances and basis of the claim, including where applicable the quantities short and/or the discrepancies in quality, and include copies of all supporting documents including the vessel's logs evidencing the matters complained of.

**11.4** To the extent that the Buyer's test report evidence that the components detected are within the allowed tolerances in respect of reproducibility or repeatability as set out in ISO 4259, the Product shall be deemed to be compliant, and the Buyer cannot require further testing of the Product.

**11.5** Where a claim is made in accordance with clauses 11.1 and 11.2 and 11.3 the Buyer shall cooperate with the Seller and the Seller representatives such that the Seller may investigate the claim, and where requested board and inspect the Vessel, interview the crew and the review and copy relevant Vessel documents.

**11.6** The Buyer will take all reasonable steps and actions to mitigate any damages, losses, costs and expenses related to any claim of alleged off-specification or defective Products, including where possible consuming the Products with use of purification tools, recommended dilution or other appropriate measures. The Buyer shall inform the Seller before any mitigating measures are performed.

**11.7** In the event that the Buyer has made a valid claim regarding the quality of the product, which cannot be mitigated in accordance with Clause 10.6, the Seller shall have the option to debunker the product and perform redelivery of on-spec product in accordance with the terms of the Contract.

**11.8** The Buyer will take all reasonable steps to preserve the Seller's recourse against the physical supplier of Products or any culpable third party.

**11.9** The Seller shall be entitled to set off losses caused by the Buyer's breach of this clause 11 against any liability the Seller has to the Buyer.

**11.10** The Buyer's submission of any claim does not relieve it of responsibility to make full payments as required under the Contract and the Buyer shall not be entitled to set off any claim from sums due to the Seller.

**11.11** Any claims against the Seller in respect of a Contract, including those notified in accordance with the provisions of these STCS, must be brought before the relevant court within 6 months from the date of delivery of the Products, failing which such claims shall be deemed waived and shall be time barred.

## 12. LIABILITY & INDEMNIFICATION

**12.1** The Seller's liability arising out of a Contract howsoever caused and including the negligence of the Seller, its servants, sub-contractors or agents and whether based in tort or contract and including claims for quality and pollution shall be limited to the lesser of (i) US$500,000, or (ii) the Price of the Products giving rise to the claim on which the Seller's liability is based. For example, where a Contract provided for the supply of two grades of Products and liability arises from one grade being off-specification then only the Price for the off-specification Products shall be taken into account in calculating the limit of the Seller's liability.

**12.2** Under no circumstances shall the Seller be liable for consequential losses, whether direct or indirect and whether or not foreseeable at the time of formation, including but not limited to, costs and losses arising from delay, detention, demurrage, charter hire, crew wages, pilotage, towage, port charges, or any lost profits or increased cost or expenses for obtaining replacement fuel. The Seller shall not be liable under any circumstances for punitive damages.

**12.3** When compensating for the replacement of parts the Seller shall be entitled to a reduction in the replacement value of 20% (twenty per cent) for each year or fraction thereof for which the replaced part has been in use.

**12.4** The Buyer shall indemnify the Seller against any claims, losses or costs of whatever kind related to the Contract, including the legal costs of dealing with such claims, instituted by third parties against the Seller to the extent that such claims exceed the Seller's liability towards the Buyer according to this clause.

**12.5** Any damage caused by contact or collision shall be dealt with by the Buyer directly with the owners of the supply barge. The Seller shall not be held liable for any such damages and the Buyer shall indemnify the Seller against any claims made against the Seller arising out of such incident.

**12.6** The Buyer shall hold harmless and indemnify the Seller in respect of any liability, costs, losses, fines, penalties and damage arising from any acts or omissions of the Buyer or its servants in connection with the delivery of Products or the bunkering operations, including the failure to obtain necessary permits or comply with applicable law.

**12.7** If the supply is delayed by the Buyer for whatever reason or the Vessel fails to leave the Place of Supply immediately, the Buyer shall indemnify the Seller for any consequent loss or damage suffered by the Seller including losses arising due to the delay in the supply of other vessels.

**12.8** In any case where the Contract is terminated by the Seller by reason of the Buyer's breach, the Buyer shall indemnify the Seller on first written demand for all costs, losses and damages incurred by the Seller as a result of the termination and the Buyer shall have no recourse against the Seller.

## 13. LIEN

**13.1** It is agreed and acknowledged that a lien over the Vessel is created for the price of the Products supplied together with any interest accrued. The Buyer if not the owner of the Vessel expressly warrants that it has full authority of the Agent/traders/owners/managers/operators/charterers to pledge the Vessel in favour of the Seller and that the Buyer has given notice of the provisions of this Contract to the owners of the Vessel. The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien(s) attaching to a Vessel.

**13.2** The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

**13.3** The Buyer or the Vessel or its owners must notify the Seller of its intention to exclude the liability of the Vessel at least 12 hours in advance of the supply by sending written notice to legal@dan-bunkering.com, failing which any notice or any stamp in the Bunker Delivery Note seeking to vitiate the Seller's maritime lien on the Vessel shall be of no effect.

## 14. COMPLIANCE

### 14.1 INTERNATIONAL SANCTIONS

14.1.1 By accepting the Seller's offer and Order Confirmation, the Buyer thereby confirms and warrants that:

a. the Buyer is in full compliance with Sanctions Laws and that neither it nor any of its subsidiaries or directors, senior executives or officers, or to the knowledge of the Buyer, any person on whose behalf the Buyer is acting in connection with the Contract, is an individual or entity ("Person") that is, or is 50% or more owned or controlled by, a Person (or Persons) that is the subject of any economic or financial sanctions or trade embargoes under Sanctions Laws; or based, organized or resident in a country or territory that is the subject of comprehensive (i.e., country-wide or territory-wide) Sanctions (including, as of the date of this Contract, Crimea, Cuba, Iran, North Korea, Russia, Syria and Venezuela) (a "Sanctioned Country") (collectively, a "Sanctioned Person");

b. the Buyer is purchasing the Products as principal and not as agent, trustee or nominee of any person or entity with whom transactions are prohibited or restricted under the Sanctions Laws; and

c. the Products purchased will not be used in any manner whatsoever directly or indirectly in connection with any entities, persons, projects, contracts, transactions or payments that contravenes any Sanctions Laws; or to fund or facilitate any activities or business of, with or related to any Sanctioned Country or Sanctioned Person, or in any manner that may reasonably result in a violation of Sanctions Laws.

d. The Buyer has completed sufficient due diligences in connection to Buyer's contractual counterparties and the transactions that Buyer has entered that are relevant for the scope of this Contract.

14.1.2 Further in relation to these Sanctions Laws, the Buyer confirms and warrants that the Vessel to be supplied is not and/or will not be:

a. A designated vessel or flagged by a Sanctioned Country;

b. Owned or chartered by or related to any designated entity or Sanctioned Person;

c. Visiting any Sanctioned Countries or regions in violation of the Sanctions Laws. In this regard, in connection to vessel's next voyage after taking the Products, Buyer represents that it will perform all reasonable due diligences to ensure that such voyage complies with Sanctions Laws, without further responsibility for the Seller. Furthermore, Buyer shall promptly provide any information that Seller may reasonably request to show compliance with said Sanctions Laws, particularly in connection with cargo's type and origin, and details regarding the shipper, consignees, and other relevant parties.

d. Involved in the transfer of goods that may be prohibited under the Sanctions Laws; or

e. Engaged in any conduct designed to evade any Sanctions Laws, including but not limited to turning off transponders, reporting false travel plans, deviating from reported travel plans and engaging in ship-to-ship transfers to hide the origin of goods.

**14.2   ANTI BRIBERY & CORRUPTION**

14.2.1   The Buyer acknowledges that anticorruption laws and regulations, including but not limited to the U.S. Foreign Corrupt Practices Act ("FCPA") and the UK Bribery Act (UKBA) shall apply to the parties. The Buyer and Seller shall comply with all applicable anticorruption laws and regulations and will not, offer, promise, pay, or authorize the payment of any money or anything of value, or take any action in furtherance of such a payment, whether by direct or indirect means, to any public official or private individual to influence the decision of such person in the performance of his duties to a government or to his company.

14.2.2   Buyer may report any concerns relating to conduct of Seller's representatives in connection with the subject matter of this Contract that breaches any applicable laws, the Seller's Code of Conduct or underlying policies to its contact at Seller or though Bunker Holding's dedicated email address at whistleblower@bunker-holding.com.

**14.3   VIOLATIONS TO THIS CLAUSE**

14.3.1   Any breach of this clause 14 will void the related Contract and in the sole discretion of the Seller any other Contract between the parties, making any claims for payment, delivery or any other obligation of the Seller under this Agreement void. The Buyer is liable for any and all costs or losses incurred by the Seller due to such breach and/or a Contract becoming void as a consequence.

14.3.2   Notwithstanding the above, if Seller is of the reasonable opinion that the Buyer has breached or will breach this clause, Seller may (without incurring any liability of any nature whatsoever) terminate or suspend all or any part of the Contract with immediate effect by notice to the Buyer or take any other action it deems necessary in order for Seller to comply with applicable sanctions. Any exercise by Seller of its right under this clause shall be without prejudice to any other rights or remedies of Seller under the Contract.

**14.4   Code of Conduct**

The Buyer acknowledges having read and understood the Seller's Code of Conduct (copy available upon request) and confirm that they operate their business under the same or similar standards therein.

# 15.   ENVIRONMENTAL PROTECTION

15.1   The Buyer must comply with all national and international trading, pollution, environmental and health and safety regulations concerning the receipt and use of Products and shall indemnify the Seller for all financial consequences, including clean-up costs and fines, of a breach of this provision.

15.2   The Buyer and the Vessel shall promptly take all such action as is reasonably necessary to mitigate the effects of any Spill occurring during a delivery of Products. The Seller shall nevertheless be entitled to take or arrange such measures as it deems reasonable to remove pollutants and mitigate the effect of a Spill. The Buyer shall cooperate and render such assistance as is required by the Seller and shall indemnify and hold the Seller and its representatives harmless against any damages, expenses, claims or liabilities of whatever nature, unless such Spill is proven to be caused solely by the Seller's negligence.

15.3   The Buyer shall provide or procure all documents and information concerning any Spill for the Seller as the Seller may demand or as may require by applicable laws or regulations.

## 16. SUBSTITUTION

**16.1** The Seller shall be entitled to substitute itself a third party for the performance of all or part of its obligations.

## 17. FORCE MAJEURE

**17.1** Neither the Buyer nor the Seller shall be responsible for any loss or damage resulting from any delay or failure in delivery or receipt in Products hereunder due to fire, explosion or mechanical breakdown, storms, earthquakes, floods, tidal waves, war, military operations, national emergency, civil commotion, strikes or other differences with workmen unions, or from any delay or failure in delivery or receipt of Products hereunder when the supplies of the Buyers or Sellers or the facilities of production manufacture, consumption, transportation, distribution of the Buyer and Seller are impaired by causes beyond the Buyer's or Seller's control, or by the order, requisition, request or recommendation of any governmental agency or acting governmental authority, or the Buyer's or Seller's compliance therewith, or by governmental proration, regulation or priority, or from any delay or failure due to any causes beyond the Buyer's or Seller's control similar or dissimilar to any such cases. When such cause or causes exist, the affected party shall have the right, upon notice without delay as soon as practicable to the other of the nature and probable duration of such cause or causes, to restrict or cease deliveries or acceptance hereunder in a fair and equitable manner for the duration of such cause.

## 18. CANCELLATION

**18.1** Where the Seller cancels a Contract due to the Buyer's breach of the Contract or conduct on the part of the Buyer entitling the Seller to cancel or the Seller establishing that sanctions are in force necessitating its withdrawal from a Contract then the Buyer shall have no recourse to the Seller and the Buyer shall be responsible for all losses, costs and expenses suffered by the Seller by reason of the cancellation, which shall include but not be limited to the Seller's loss of profit on the Contract, costs or charges reasonably incurred to the Seller's sub-contractors or suppliers, and administrative costs.

**18.2** Where the Buyer cancels the supply after the Order Confirmation the Buyer shall be liable for any costs, expenses or charges incurred by the Seller and the Buyer shall be liable to pay to the Seller the difference between and the price payable to the Seller's supplier and its selling price to the Buyer, such sums to be paid immediately upon demand.

## 19. LAW AND JURISDICTION

**19.1** These STCS and each Contract to which they apply shall be governed by the general maritime law of the United States of America, which shall include the Commercial Instruments and Maritime Lien Act ("together the General Maritime Law"). The state law of the State of New York shall also apply to these STCS and each Contract to which they apply, but only so far as is strictly necessary to govern matters not addressed by the General Maritime Law.

**19.2** Any dispute arising out of or in connection with the Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

**19.3** The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

**19.4** In cases where the claim or any counterclaim does not exceed the sum of USD 2,000,000 (or such other sum as the parties may agree) the arbitration shall be referred to a sole arbitrator.

**19.5** In all other cases the reference shall be to three arbitrators. A Party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other Party requiring the other Party to appoint its own arbitrator within fourteen (14) calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other Party appoints its own arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the other Party does not appoint its own arbitrator and give notice that it has done so within the fourteen (14) days specified, the Party referring a dispute to arbitration may, without the requirement of any further prior notice to the other Party, appoint its arbitrator as sole arbitrator and shall advise the other Party accordingly. The award of the sole arbitrator shall be binding on both Parties as if the arbitrator had been appointed by agreement.

**19.6**   The parties to this Contract, which includes the Buyer's Agent and all other entities included under the definition of Buyer, are bound by this arbitration agreement, each to each other, and consent to the joinder or consolidation in arbitration of any party or arbitration necessary for the complete resolution of all disputes arising out of the performance of the Contract. Where disputes arise in relation to more than one Contract, the Buyer and the Seller consent to the consolidation of any dispute arising under this Contract with any other dispute arising under any other contract made between the Buyer and the Seller such that the arbitration proceedings can be initiated by a single notice of arbitration and settled by a single arbitration award.  A joined party shall be bound by any award rendered by the arbitral tribunal even if such party chooses not to participate in the arbitral proceedings.

**19.7**   Nothing herein shall prevent the Parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

**19.8**   The 1980 united Nations Convention on Contracts for the International Sale of Goods (CISG) shall not apply.

**19.9**   Notwithstanding the provisions of 19.2 to 19.6, the Seller may elect to commence court proceedings in any jurisdiction, either to substantively determine any dispute between the parties or to obtain security or other ancillary relief. Without limitation to the foregoing, where a court has ordered the arrest of a ship or other property the Seller shall be at liberty to elect that that court (or other court in that jurisdiction) shall have substantive jurisdiction. Where arbitration proceedings are commenced but a court assumes substantive jurisdiction in accordance with this clause, the arbitration proceedings shall be stayed.